STRAUSS, APPELLEE, *v.* CHARLES F. McCURDY, INC., APPELLANT, ET AL.

(No. 1083—Decided April 27, 1957.)

*Mr. Jackson Bosch* and *Mr. Andrew W. Cherney,* for appellee.

*Messrs. Andrews & Berridge* and *Messrs. Johnson & Gehrig,* for appellant Charles F. McCurdy, Inc.

*Mr. E. H. Jalmar Perrson,* for city of Hamilton.

LONG, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Butler County, Ohio. The action is one in which the plaintiff sought damages from the defendants for dumping dirt, rock, stone and other similar material upon the vacant lot of the plaintiff, without authority of the plaintiff.

The city of Hamilton was dismissed.

It is alleged in plaintiff's petition that Charles F. McCurdy, Inc., defendant herein, was engaged in the laying of pipe and water lines for the city of Hamilton, and that it deposited the materials on the premises of plaintiff as the result of excavating for the water lines.

There is no dispute in the record that the acts of the defendant were without the consent of the plaintiff. However, there is a dispute as to the damage incurred by plaintiff in the cost of removing the dirt so placed by defendant on plaintiff's premises.

The law of the case, in the opinion of this court, is, simply stated, that plaintiff is entitled to reimbursement for the reasonable value of the cost of removing the dirt; in other words, what would it cost the plaintiff to have his premises restored to their original condition before the unlawful acts of defendant.

We have read the bill of exceptions and find the following evidence:

William Wood, witness for the plaintiff, a contractor for seven years and builder for 16 years, testified that "it would cost from $1,000 to $1,200 to put the lot back where it was."

Abrom Dombar testified that he has been an architectural designer for 26 years. What he knows about the cost of removal of dirt is questionable, at least, the probative value of his testimony does not impress this court too much. In any event, he is the witness who places the value of removing the dirt at $2,000. He breaks that figure down as follows: "I esti-

mated the amount of dirt—the pile that is there—there's about 200 loads—at $10 a load.'' He further stated that ''if any trees were damaged in the removal, it would be more.''

On the other hand, the defendant produced the following witnesses:

Walter Follmer, who has been an excavating contractor for 25 years, testified as follows: ''Well—if you level it down—about $150—if you move out the other dirt. If you are talking about moving the dirt above the elevation of the curb, I would say $200 to $250.'' He testified further that if all the dirt were removed, there would be about 500 yards ''to come out'' at $1 per yard or $500.

Owen King was next called as a witness. He was a general contractor and excavator for 30 years; he testified that to remove all the dirt—''I would say—to give me leeway, I would say between two and three hundred dollars.''

Finally, Mr. McCurdy himself was called. He testified from an experience of 40 years as an excavator that it would cost $200 to $250 ''for removing the excavated material.''

Of all the witnesses who testified as to restoration costs, with the exception of Dombar, the only one whose estimate exceeds the rest is Wood, who placed the value of the removal of the dirt at between $1,000 and $1,200. Taking Wood's highest figure of $1,200, the judgment is still $800 too high.

It is the opinion of this court that the plaintiff should accept an additional remittitur of another $800, or consent to a final judgment of $1,200, which, in our opinion, is ample compensation for restoring his lot to its original condition. If the plaintiff accepts the suggestion of this court, judgment will be rendered in favor of the plaintiff and against the defendant for $1,200; otherwise, a new trial will be granted the defendant.

*Judgment accordingly.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.